UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JAMES S. MCFARLAND,

    Plaintiff,

v.                                   CASE NO. 8:13-cv-3076-T-23MAP

CITY OF TAMPA, *et al.*,

    Defendants.

_____/


**ORDER**

Suing under 42 U.S.C. § 1983, James McFarland alleges that Tampa police officers James Verble and Michael Fisher arrested him without probable cause, illegally entered and searched his apartment, and confined him in a hot patrol car.[1] McFarland moves (Doc. 67) for summary judgment. The defendants respond by a cross-motion for summary judgment (Doc. 71). McFarland responds (Doc. 73-1) and moves "to clarify" (Doc. 81).

**BACKGROUND**

At 10:39 p.m. on August 6, 2012, Tampa police received a call reporting gunshots at McFarland's apartment. Tampa police officers, including Verble and Fisher, responded. Predictably, the parties' accounts differ materially.

---

[1] Verble and Fisher are the only remaining defendants. An April 23, 2014 order (Doc. 18) dismisses the Tampa Police Department and the City of Tampa. A February 22, 2016 order (Doc. 57) dismisses Chief Jane Castor and officer Antonio Ortiz-Saldana.

### The defendants' account

When Verble arrived, McFarland's apartment door "was standing wide open," and McFarland stood inside the door.  McFarland wore dreadlocks and a black tank top, consistent with the description of the shooter.  (Doc. 71-5 at 28–29)

Verble asked McFarland to show his hands and exit the apartment.  Verble checked McFarland for weapons in the front yard.  Verble "approached the front door of the residence and observed a small silver revolver on top of a large speaker just inside the front door."  According to Verble, the gun "was in plain view from outside the house."  Verble asked McFarland "if he had ever been to prison" and McFarland answered "yes."  A records check confirmed that McFarland was a convicted felon.  (Doc. 71-5 at 29)

Verble arrested McFarland at 10:45 p.m., six minutes after the shots-fired call.  The defendants assert that Verble possessed arguable probable cause to arrest McFarland for a violation of Section 790.23(1), Florida Statutes, which forbids a convicted felon's possessing a firearm.  (Doc 71-4 at 1, Doc. 71-5 at 27)

Verble "conducted a check of the residence for any possible shooting victims that might be inside."  Verble located no victims, but he smelled cannabis and observed drug paraphernalia.  Verble and other officers secured the apartment.  (Doc. 71-5 at 27, 29)

After "developing probable cause" and advising McFarland of his *Miranda* rights, Fisher attempted to obtain McFarland's consent to search the apartment.

- 2 -

McFarland refused and told Fisher to get a warrant. When Fisher returned with a warrant, Fisher, Verble, and other officers searched the apartment. The search revealed cocaine, cannabis, oxycodone, baggies, scales, and a cannabis pipe. (Doc. 71-5 at 34–36)

McFarland was charged with possession of a firearm by a convicted felon, possession of ammunition by a convicted felon, possession of cocaine with intent to distribute, possession of cannabis with intent to distribute, possession of less than twenty grams of cannabis, possession of a controlled substance (oxycodone), and possession of drug paraphernalia. At approximately 8:00 a.m. on August 7, 2012, McFarland was booked into the Hillsborough County jail. (Doc. 53 at ¶¶ 8–9, Doc. 71-4 at 1, Doc. 71-5 at 5, 7)

### McFarland's account

McFarland maintains that he was washing a truck in his front yard when Verble and Fisher approached and asked about gunshots fired in the neighborhood. McFarland answered their questions and allowed Verble to test his hands for gunshot residue, which came back negative. Without explanation, Verble arrested McFarland. (Doc. 53 at ¶¶ 2–4)

At the time of the arrest, the front door to McFarland's apartment was closed. McFarland refused to allow the officers to enter his apartment. Nonetheless, Verble entered the apartment. (Doc. 73-1 at 2, Doc. 67 at 2, Doc. 53 at ¶ 5)

While officers searched his apartment, McFarland remained handcuffed in the back seat of a patrol car with the windows closed and without air-conditioning. According to McFarland, when he told them to leave his apartment, the officers called McFarland "nigger, coon, [and] black monkey with dre[a]ds."[2] (Doc. 53 at ¶¶ 4–6)

After three or four hours in the patrol car, McFarland began screaming for help. Two unidentified officers moved the handcuffs to the front of McFarland's body and released him from the car to stretch. At some point, the officers moved McFarland to his living room couch. (Doc. 53 at ¶ 7, Doc. 67 at 2, Doc. 71-5 at 38)

Ultimately, Verble and Fisher re-entered the apartment, removed items, and arrested McFarland based on those items. McFarland maintains that a gun located during the search is a replica revolver. (Doc. 53 at ¶ 9, Doc. 73-1 at 1)

## DISCUSSION

Under Section 1983, a plaintiff can sue a person who acts under color of state law and who violates the plaintiff's constitutional rights. *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009). Genuine issues of material fact preclude summary judgment for the plaintiff.

But, because the "threat of litigation may stymie a police officer's ability to perform his duties effectively," qualified immunity protects completely a police

---

[2] The February 22, 2016 order dismisses the complaint to the extent that McFarland alleges the verbal abuse constitutes a "hate crime" or a distinct constitutional violation. (Doc. 57 at 9–10)

officer from Section 1983 liability if the officer acts within his discretionary authority and if the officer violates no clearly established constitutional right. *Garczynski*, 573 F.3d at 1166 (internal quotation marks omitted).

Invoking qualified immunity, the defendants move for summary judgment. To establish a qualified-immunity defense, the defendants must first show that they acted within their discretionary authority. *Mobley v. Palm Beach Cnty. Sheriff Dept.*, 783 F.3d 1347, 1352 (11th Cir. 2015). No dispute exists on that issue, and the burden shifts to McFarland to demonstrate that the defendants violated a clearly established constitutional right. *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012). An arrest without probable cause violates the Fourth Amendment. But an officer is entitled to qualified immunity if the officer possesses at least "arguable" probable cause for the arrest. *Wilkerson v. Seymour*, 736 F.3d 974, 977–78 (11th Cir. 2013). Arguable probable cause exists when a reasonable officer "in the same circumstances and possessing the same knowledge . . . could have believed that probable caused existed." *Wilkerson*, 736 F.3d at 978 (internal quotation marks omitted).

For the most part, genuine issues of material fact preclude summary judgment for the defendants. McFarland claims he was arrested immediately upon the officers' arrival at the scene and wholly without probable cause. If so, qualified immunity is unavailable to the arresting officers in an action based on that arrest.

- 5 -

However, the defendants convincingly insist that arguable probable cause existed to arrest McFarland on the morning of August 7, 2012, "because illegal drugs, paraphernalia, a gun, and ammunition were inside [McFarland's] apartment and truck and each item constituted a violation of Florida law." (Doc. 71 at 10) McFarland offers no substantial argument on this issue. At best, McFarland's complaint implies that items seized during an illegal search cannot provide the basis for a valid arrest. (Doc. 53 at ¶ 8) However, "the exclusionary rule does not apply in a civil suit against police officers." *Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016). Ample probable cause supported McFarland's arrest on the morning of August 7, 2012, and against a Section 1983 claim based on that arrest the defendants are protected by qualified immunity.

### Motion to clarify

McFarland files a "motion to clarify," which argues that the defendants' failure to file a separate response to his motion for summary judgment warrants judgment in his favor. McFarland is mistaken. Even when a motion for summary judgment in unopposed, a court must determine whether the moving party is entitled to judgment as a matter of law. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101–02 (11th Cir. 2004).

### CONCLUSION

McFarland's motion for summary judgment (Doc. 67) is **DENIED**. The defendants' motion for summary judgment (Doc. 71) is **GRANTED** on the claim

based on the arrest on the morning of August 7, 2012.  The defendants' motion for

summary judgment otherwise is **DENIED**.[3]  Also, McFarland's "motion to clarify"

(Doc. 81) is **DENIED**.

ORDERED in Tampa, Florida, on March 17, 2017.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[3] The defendants have not expressly argued that the officers' pre-warrant entry into the premises was a lawful "protective sweep." Walter R. Lafave, *Search and Seizure*, vol. 3, § 6.4 (c) (Thomson Reuters West 2012); *United States v. Caraza*, 843 F.2d 432 (11th Cir. 1988); *United States v. Maldonado*, 472 F.3d 388 (5th Cir. 2006).